UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIGHTBORNE PUBLISHING, INC., :
                                              :   NO. 1:08-CV-00464
          Plaintiff,                          :
                                              :
                                              :   **OPINION AND ORDER**
    v.                                        :
                                              :
                                              :
CITIZENS FOR COMMUNITY VALUES, :
et al.,                                       :
                                              :
          Defendants.                         :


        This matter is before the Court on Defendants City of
Cincinnati, Police Chief Thomas Streicher, and Concilmember Chris
Monzel's Motion to Dismiss (doc. 7); Plaintiff's Response in
Support (doc. 36); and Defendants' Response in Opposition (doc.
46).  Also before the Court are Defendant Sheriff Simon Leis'
Motion for Judgment on the Pleadings (doc. 59); Defendants Armour,
Brown, Bussard, Carney, Chandler, Davis, Garibay, Glenn, Greenlea,
Gubasta, Howard, Jackson, James, Keily, Kirk, Mack, Mcentire,
Maynor, Pankey, Radeck, Rose, Roy, Schatz, Smith, Stephens, Taylor,
Viars, Wallace, Westwood, Wilkins, and Winburn's Motion to Dismiss
(doc. 70); Defendant Garry Edmondson's Motion to Dismiss (doc. 74);
Defendants Citizens for Community Values and Phil Burress' Motion
to Dismiss (doc. 84); Defendant Aaron Negangard's Motion to Dismiss
(doc. 88);  Defendant Justin Verst's Motion for Judgment on the
Pleadings (doc. 89);  Plaintiff's Consolidated Response in

Opposition (doc. 91); and Defendants' Briefs in Support (docs. 92, 93, 95, 96, 97, 98).  For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions.

## I. BACKGROUND

The following facts are drawn from the Amended Complaint (doc. 2).  Plaintiff Lightborne Publishing, Inc. ("City Beat") is an Ohio corporation which owns and operates a free weekly news publication known as City Beat(<u>Id</u>.).  Defendants, various private citizens, a non-profit organization, and government officials and entities sued in their official capacities, are signatories to a June 6, 2008 letter sent to City Beat editor John Fox (<u>Id</u>.). The body of the letter reads as follows:

> We, the undersigned, represent a diverse coalition of non-profit organizations, law enforcement agencies and concerned individuals united by a common concern: the exploitation of women, the devastation of families, and the endangerment of greater Cincinnati's communities brought about by prostitution and other aspects of the sex-for-sale industry.

> Many of the undersigned know first-hand the tragic outcomes of the sex-for-sale industry in that we regularly assist the women, men children and families who become its victims in greater Cincinnati.  Such victims include but are not limited to the women trapped in this degrading, abusive industry; families that have been dismantled as a result of addictions to such services; and entire communities depressed by the criminal element often associated with this industry.

> We approach the management of CityBeat because it has been brought to our attention that the adult classified ad sections of both your

weekly print edition and your online edition, CityBeat.com, have become primary avenues through which the sex-for-sale industry in greater Cincinnati markets their destructive services.

The majority of ads in CityBeat's adult classified section clearly appear to be outright or thinly veiled advertisements for prostitution or other sexual services, many of which are in violation of state criminal laws. The Organized Crime Division of the Hamilton County Sheriff's Department and the Vice Control Section of the Cincinnati Police Department report that many of the arrests made relating to prostitution, solicitation and promoting prostitution offenses result from phone calls placed to numbers listed under the adult services category of CityBeat and CityBeat.com.

Earlier this month police in Ohio, Indiana and Northern Kentucky raided several "massage parlors" and "spas" in the Tri-State area, making multiple arrests on charges ranging from prostitution and human trafficking to tax evasion and money laundering. The raids were the culmination of a two-year investigation by a task force consisting of local law enforcement agencies plus several federal agencies including the Internal Revenue Service, U.S. Postal Inspection Service, Immigration and Customs Enforcement, U.S. Customs and the U.S. Attorney's Office in Indianapolis. Several of the "spas" targeted in the raid were regular CityBeat advertisers.

Together, we, the undersigned, therefore appeal to your integrity as a corporate citizen and ask that you eliminate the adult services category, and refuse to accept ads elsewhere for sexual services, in both your print and online editions. By taking this responsible action you will be assisting us in reaching out in compassion to the many women, men and families negatively impacted by the sex-for-sale industry and will be contributing to the physical and emotional health and

> safety of the communities that you serve.
>
> Thanks for your consideration of our request and your reply (Id.).

On Monday June 9, 2008, a press advisory entitled "CityBeat newspaper accused of accepting prostitution ads" was issued, and a press conference was held at Cincinnati's City Hall by some Defendants, lead by Defendant CCV (Id.). Room 115 of City Hall, use of which, Plaintiff represents is limited to official city business, was reserved by Councilmember Chris Monzell and used for the press conference (Id.). Plaintiff states that it did not receive the letter until after the June 9th press conference (Id.). After these events, and, alleges Plaintiff, as a result of the events, City Beat's advertising revenue, in particular the revenues generated from adult services classified advertisements, has been reduced by nearly twenty-five percent (Id.). Later in June, 2008, Plaintiff held its own press conference where it announced it would continue to run the adult services advertisements.

> Thereafter, Plaintiff brought this action:
>
> [U]nder the laws and Constitution of the United States, as well as the laws and Constitution of the State of Ohio, pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that Defendants engaged in a conspiracy to violate Plaintiff Lightborne Publishing, Inc. d/b/a City Beat's protected First Amendment rights and to chill City Beat's free expression and freedom of the press in the future by, under color of state law, demanding in writing that the newspaper refrain from accepting and publishing advertisements for adult oriented businesses (Id.).

Plaintiff brings claims against Defendants for violations of 42 U.S.C. §§ 1983 and 1985, and under state law for tortious interference with a business relationship (<u>Id</u>.). Defendants now seek dismissal of Plaintiff's claims (docs. 7, 59, 70, 74, 88, 89).

## II. APPLICABLE LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6), as well as a motion for judgment on the pleadings, requires the Court to construe the complaint in the light most favorable to the plaintiff, <u>Block v. Ribar</u>, 156 F.3d 673, 677 (6th Cir. 1998), and accept as true all the Complaint's factual allegations, <u>Broyde v. Gotham Tower, Inc.</u>, 13 F.3d 994, 996 (6th Cir. 1994). A court's decision to grant a motion to dismiss may not be based upon a disbelief of the Complaint's factual allegations. <u>Miller v. Currie</u>, 50 F.3d 373, 377 (6th Cir. 1995) (courts should neither weigh evidence nor evaluate the credibility of witnesses). Instead, in its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974)(overruled on other grounds). Indeed, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). The question before the Court considering a motion to dismiss is "not whether [the] plaintiff will ultimately prevail but whether

-5-

the claimant is entitled to offer evidence to support the claims."
<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

The admonishment to liberally construe the plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." <u>Car Carriers, Inc. v. Ford Motor Co.</u>, 745 F.2d 1101, 1106 (7th Cir. 1984)(<u>quoting</u> <u>In Re: Plywood Antitrust Litigation</u>, 655 F.2d 627, 641 (5th Cir. 1981)). As the Supreme Court recently held in <u>Bell Atlantic Corp. V. Twombly</u>, 127 S.Ct 1955 (2007), "a plaintiff's obligation is to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id</u>. at 1964-65. <u>See also</u> <u>Ass'n of Cleveland Fire Fighters, et al., v. City of Cleveland, et al.</u> 2007 WL 2768285, *2 (6th Cir. 2007). Additionally, the Court stated that the complaint need not contain detailed factual allegations, but its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Id</u>.

# III. DISCUSSION

The Defendants, in their various motions, make similar arguments with regard to Plaintiff's claims. The Court will address each issue in turn.

## A. Standing

Any party seeking federal jurisdiction must first establish standing under Article III of the United States Constitution. <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83 (1998). To achieve Article III standing "[f]irst, the plaintiff must have suffered an 'injury in fact'- of a legally protected interest which is (a) concrete and particularized...and (b) actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be a causal connection between the injury and the conduct complained of... Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992). Defendants contend that Plaintiff cannot establish any of the above requirements and therefore cannot establish Article III standing.

Defendants argue that Plaintiff has suffered no "injury in fact", first contending that under the Supreme Court's decision in <u>Central Hudson</u>, Plaintiff's adult services advertisements are not protected commercial speech because, Defendants argue, the advertisements overtly or discretely solicit prostitution. <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.</u>, 447 U.S.

557 (1980).  This argument is misplaced.  In a motion to dismiss the Court must accept as true Plaintiff's factual allegations, and the Amended Complaint represents that the advertisements in question are legitimate commercial speech (doc. 2).[1]

Defendants also argue that there is no casual connection between any loss in Plaintiff's advertising revenue and Defendants' letter and press conference because Plaintiff chose to hold its own press conference to announce the decision to continue publishing the advertisements.  Defendants argue that it was Plaintiff's own actions that caused any reduction in revenue.  Again, the Court finds this argument, which necessitates a factual determination, misplaced.  In the Amended Complaint, Plaintiff alleges "[a]s a direct result of the CCV coalition's campaign, City Beat's advertising revenue, and in particular the revenues generated from adult services classified advertisements, has been reduced by nearly 25 percent" (doc. 2).  Accepting this as true, the Court finds Plaintiff has sufficiently alleged a casual connection.

Finally, Defendants argue that due to Plaintiff's

---

[1] The Court also notes that the City of Cincinnati argues that Plaintiff has no standing to challenge the City's procedure for allowing access to City Hall (doc. 7).  However, as Plaintiff points out, it is not challenging these procedures and therefore the Court need not consider this argument.  Further, because the Court finds that Plaintiff's allegations of revenue loss are sufficient to show an "injury in fact" the Court also does not need to address Defendants' argument that Plaintiff's allegations of chilled speech do not constitute a concrete injury under Sixth Circuit case law (doc. 74).

decision to continually publicize this matter, it is highly unlikely a favorable decision in this litigation would solve any problems. The Court does not find this speculative argument persuasive. Plaintiff has alleged that their loss of revenue resulted in part from the adult services section and argues that "a favorable decision would redress the injury City Beat has suffered because advertisers would once again be able to safely and confidently place protected advertisements for adult services" (doc. 91). Therefore, for the above reasons, the Court finds Plaintiff's allegations sufficient to establish Article III standing, and dismissal on this ground is not proper.

**B. Ripeness**

In its motion, Defendants the City of Cincinnati, Councilmember Chris Monzell and Police Chief Streicher ("City Defendants") argue that Plaintiff's claims must be dismissed because they are not ripe (doc. 7). The City Defendants contend that to the extent Plaintiff infers prospective unlawful conduct, Plaintiff's claims are hypothetical and thus, not ripe (Id.). In response, Plaintiff argues that its First Amendment claim is ripe under the doctrines of prior restraint and unlawful chilling of speech (Id., citing Shuttlesworth v. City of Birmingham, 394 U.S. 147, 151 (1969); City of Lakewood v. Plain Dealer, 486 U.S. 750, 757 (1988)). Reviewing the Amended Complaint, the Court agrees that Plaintiff has properly alleged that Defendants' actions resulted in

an unlawful chilling of speech, as well as an actual economic loss, and therefore Plaintiffs' claims are ripe for review.

### C. 42 U.S.C. § 1983 First Amendment Claim

Defendants next argue that Plaintiff has not properly alleged its 42 U.S.C. § 1983 claim.

### 1. Official Capacity Suits

As an initial matter, the Court notes that all governmental officials are sued in their official capacities only (doc. 2). Municipal corporations and local governments are "persons" within the meaning of 42 U.S.C. § 1983, and are not, therefore, wholly immune from suit. See Monell v. Department of Soc. Servs. of City of New York, 436 U.S. 658, 690 (1978). A governmental entity may not be held liable under § 1983 for an employee's conduct on the basis of respondeat superior. Monell, 436 U.S. at 691. Rather, a plaintiff must show that the government entity itself is the wrongdoer. Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992). A claim against a governmental employee is actually a claim against the governmental entity itself if the employee is sued in his official capacity. See Kentucky v. Graham, 473 U.S. 159, 165,(1985). Such a claim is, thus, subsumed in the claim against the governmental entity, and cannot be maintained independently. Graham, 473 U.S. at 165, 105 S.Ct. 3099.

In contrast, "personal-capacity suits" seek to impose personal liability upon a government official for actions the

official takes under color of state law. See Scheuer v. Rhodes, 416 U.S. 232, 237-38,(1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). On the other hand, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690-91; see also Graham, 473 U.S. at 165-66.

A municipality may be sued for monetary, declaratory, or injunctive relief under 42 U.S.C. 1983, where the action that is alleged to be unconstitutional either (1) implements or executes a policy, ordinance, regulation, or decision officially adopted and promulgated by the municipality, or (2) results from governmental "custom or usage" that has become so settled as to have the force of law. Monell, 436 U.S. at 690-91; Jacobs v. Village of Ottawa Hills, 111 F.Supp.2d 904, 914-15 (N.D.Ohio 2000). Additionally, where the established policies of the municipality do not violate the constitution directly, municipalities may incur § 1983 liability where they fail to adequately train their personnel such that a constitutional policy is applied in an unconstitutional manner. Center for Bio-Ethical Reform, Inc. v. City of Springboro 477 F.3d 807, 819 (6th Cir. 2007) City of Canton v. Harris, 489 U.S. 378, 387 (1989). There, however, the plaintiff must show "the failure to train amounts to deliberate indifference to [the] rights of persons with whom the police come into contact." City of Canton,

489 U.S. at 388. "In essence, the municipality must have exhibited deliberate indifference to 'known or obvious consequences,' and mere 'simple or even heightened negligence will not suffice' to render it liable." Center for Bio-Ethical Reform, Inc., 477 F.3d at 819 (quoting Bd. of the County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407 (1997)).

The governmental official Defendants contend that Plaintiff has failed to allege any policy or custom under Monell, or that any action of these Defendants was the result of a failure to train (doc. 59). The Court finds this argument well-taken as to Defendants Simon Leis, Aaron Negangard, Justin Verst, and Garry Edmondson. Plaintiff's only allegation involving these Defendants or the governmental entities which they represent is that these Defendants endorsed the June 6, 2008 letter (doc. 2). The Court finds that with regards to Defendants Simon Leis, Aaron Negangard, Justin Verst, and Garry Edmondson, Plaintiff has alleged no action taken in accordance with an unconstitutional or illegal municipal policy or custom, nor that any of these governmental entities failed to adequately train their personnel such that a constitutional policy is applied in an unconstitutional manner. Monell, 436 U.S. at 690-91; Center for Bio-Ethical Reform, Inc., 477 F.3d at 819. Therefore dismissal of Plaintiff's § 1983 claims against Defendants Simon Leis, Aaron Negangard, Justin Verst, and Garry Edmondson is proper.

-12-

As to Plaintiff's § 1983 claims against the City Defendants, the Court finds that Plaintiff has pled allegations sufficient to survive a motion to dismiss. Plaintiff points to the following allegations: "the July 6 letter was by agents of the City of Cincinnati in their official capacity; the City Hall space was clearly made available by Councilman Monzell acting in his official capacity; City Hall is limited to official city use" (doc. 36). Liberally construing Plaintiff's Amended Complaint, as the Court must do at this stage in the proceedings, <u>Scheuer</u>, 416 U.S. at 236, the Court could find the City's actions in allowing the CCV press conference to be held at City Hall, combined with Defendants Monzell and Streicher's endorsement of the June 6, 2008 letter to constitute a "decision officially adopted and promulgated by the municipality" or evidence of the City's failure to adequately train Defendants Monzell and Streicher, resulting in the unconstitutional application of its policies. <u>Monell</u>, 436 U.S. at 690-91; <u>Center for Bio-Ethical Reform, Inc.</u>, 477 F.3d at 819.

## 2. Prima Facie case

To establish a <u>prima</u> <u>facie</u> case under 42 U.S.C. § 1983, a plaintiff must prove the following two elements: "1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." <u>Bloch v. Ribar</u>, 156 F.3d 673, 677 (6th Cir. 1998); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981). The Amended Complaint

-13-

alleges that Defendants, acting under the color of state law, violated Plaintiff's First Amendment right to freedom of speech (doc. 2).

### a. Under Color of State Law

First, the private party Defendants argue that Plaintiff has not properly alleged that they acted under the color of state law (doc. 98). There are circumstances under which a private actor may be found to have acted under the color of state law for § 1983 purposes. Generally, the Sixth Circuit recognizes three tests for determining whether a private party's conduct is fairly attributable to the state:

> [T]he public function test, the state compulsion test, and the nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state.... The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003). "Application of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors." Memphis, Tennessee Area Local, American Postal Workers Union,

-14-

AFL-CIO v. City of Memphis, 361 F.3d 898, 905 (6th Cir. 2004) (citing Cooper v. Parrish, 203 F.3d 937, 952 n. 2 (6th Cir. 2000)). Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents. Id.; Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (stating that to act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.); Hooks v. Hooks, 771 F.2d 935, 943 (6th Cir.1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983."); Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003).

Here the Court is concerned with the sufficiency of the allegations in the Amended Complaint as to the alleged action under color of law. Unlike Cramer v. City of Detroit, 267 Fed. Appx. 425 (6th Cir. 2008), where the Sixth Circuit found that summary judgment was proper because there was no evidence of joint activity between private and state actors, here Plaintiff alleges that the private party Defendants acted jointly with state officials in submitting the June 6, 2008 letter and holding the press conference at Cincinnati's City Hall, actions which Plaintiff claims violated its First Amendment rights. Therefore, because Plaintiff has sufficiently alleged concerted action between the state and private

actors, the Court finds that dismissal on this basis is not proper.

### b. Deprivation of Federal Right

Second, Defendants argue that Plaintiff cannot show that Defendants' action caused a deprivation of Plaintiff's federal rights because Plaintiff has failed to state First Amendment claim upon which relief can be granted (docs. 7, 98).   A constitutional free speech right is violated where a plaintiff shows: "(1) he was participating in a protected activity; (2) defendant's action injured plaintiff in a way likely to chill a person of ordinary firmness from further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action."   Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir. 1998) (internal citations omitted) Center for Bio-Ethical Reform, 477 F.3d at 821.

First, Plaintiff has alleged that it was participating in a protected activity, publishing legal adult-oriented commercial ads (doc. 36).   Defendants again argue that under Central Hudson, these ads are not entitled to First Amendment Protection because they do not concern lawful activity and are misleading (doc. 7, citing Central Hudson Gas & Electric Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 563-64 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity.")). As stated above, a motion to dismiss concerns the sufficiency of

the complaint, and because Plaintiff has alleged the ads are legitimate commercial speech, the Court does not find Defendants' position well-taken.

In support of the second prong, Plaintiff alleges that the press conference held at Cincinnati's City Hall and the letter signed by Defendants, both with the purpose of dissuading Plaintiff to continue publishing the ads, were likely to chill a person of ordinary firmness from further participation (doc. 2). Plaintiff contends that the governmental officials' endorsement of the June 6th letter, officials who possessed the power to investigate and prosecute Plaintiff make this case similar to <u>Bantam Books, Inc. v. Sullivan</u>, 372 U.S. 58 (1963), which held "the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation" unconstitutionally chilled the plaintiff's speech (doc. 91).

A plaintiff need not allege he was actually deterred from exercising his right to free speech, but rather must allege the actions were "capable of deterring a person of ordinary firmness from exercising his or her right[s]." <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 398 (6th Cir. 1999). Although the Court recognizes that this case somewhat turns the First Amendment on its head by seeking to hold Defendants liable for what was arguably an exercise of Defendants' own First Amendment rights, at this stage in the proceedings the Court must construe all allegations in favor of the

Plaintiff.  Therefore, the Court finds that Plaintiff has properly alleged that Defendants' actions could be construed as a threat of investigation and prosecution "capable of deterring a person of ordinary firmness from exercising his or her right[s]." Id.

Finally, as to the third prong, Plaintiff alleges that Plaintiff's adult-oriented ads were the motivation behind the press conference and letter (doc. 36).  Therefore, the Court finds that Plaintiff has sufficiently pled a violation of Plaintiff's constitutional right to free speech.

### D. 42 U.S.C. § 1985 Claim

Defendants next argue that there is no viable legal theory that can support the Plaintiffs' conspiracy claim under 42 U.S.C. § 1985, because that statute does not apply to this case, and even if it does, Plaintiff has failed to sufficiently plead all the necessary elements (doc. 84).

Congress passed § 1985(3) in order to provide a cause of action against participants in private conspiracies to deprive others of legal rights. Griffin v. Breckenridge, 403 U.S. 88, 101 (1971). A plaintiff makes out a valid cause of action under § 1985(3) by demonstrating: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a

deprivation of any right or privilege of a United States citizen.

United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29,

(1983); Conklin v. Lovely, 834 F.2d 543, 548 (6th Cir.1987).

The Supreme Court in Griffin established that a necessary
element of § 1985(3) claim is the existence of "some racial, or
perhaps otherwise class-based, invidiously discriminatory animus
behind the conspirators' action". 403 U.S. at 102. While the
Supreme Court has explicitly left open whether § 1985(3) reaches
conduct other than that motivated by racial animus, the Sixth
Circuit has held unequivocally that it does[2]. See United Bhd. of
Carpenters & Joiners v. Scott, 463 U.S. 825, 835 (1983). Volunteer
Medical Clinic, Inc. v. Operation Rescue, 948 F.3d 218 (6th Cir.
1991). In Browder v. Tipton, the Sixth Circuit interpreted §
1985(3) to hold that "the class of individuals protected by the
'equal protection of the laws' language of [§ 1985(3)] are those
so-called 'discrete and insular' minorities that receive special
protection under the Equal Protection Clause because of inherent
personal characteristics." 630 F.2d 1149, 1150 (6th Cir. 1980).
Volunteer Medical Clinic, 948 F.2d at 224. As Defendants argue,
Plaintiff, a corporation, does not make any allegation that it is

---

[2] See, e.g., Conklin v. Lovely, 834 F.2d 543, 549-50 (6th Cir. 1987) (holding that § 1985(3) extends to animus directed against political views); Glasson v. City of Louisville, 518 F.2d 899, 911-12 (6th Cir.), cert. denied, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); Cameron v. Brock, 473 F.2d 608, 610 (6th Cir. 1973).

a discrete and insular minority as required to sustain a §1985(3) claim (doc. 96). Therefore, because Plaintiff has failed to plead a cognizable claim under 42 U.S.C. § 1985, the Court finds dismissal of this claim, as to all Defendants, proper.

### E. Tortious Interference

As an initial matter, because the Court has found it proper to dismiss the federal claims against Defendants Simon Leis, Aaron Negangard, Justin Verst, and Garry Edmondson, the Court declines to accept supplemental jurisdiction on the state law claim against them.

As to the remaining Defendants, under Ohio law, "[t]he tort of interference with a business relationship occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another." <u>McConnell v. Hunt Sports Enters.</u>, 725 N.E.2d 1193, 1216 (Ohio Ct.App.1999). The elements of tortious interference with a business relationship are "(1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an intentional interference causing a breach or termination of the relationship, and (4) damages resulting therefrom." <u>Harris v. Bornhorst</u>, 513 F.3d 503 (6th Cir. 2008). Defendants argue that this claim should be dismissed because Plaintiff has failed to allege intentional interference (doc. 84).

Reviewing the Amended Complaint, the Court does not find

Defendants' position well-taken. Plaintiff alleges that the purpose, and result, of the letter, press release, and press conference was to interfere with its business relationship with its adult services advertisers (doc. 2). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Hishon</u>, 467 U.S. at 73. At this point in the proceedings, the Court finds these allegations sufficient to survive a motion to dismiss on this claim.

### F. SLAAP

Finally, Defendants argue that this case should be recognized as a "Strategic Lawsuit Against Public Participation" ("SLAAP") action and dismissed accordingly (doc. 70). SLAAP actions are described as "a civil suit...filed against nongovernmental individuals and groups because of their communications to the government...on issues of some public or social significance." Kathleen L. Daerr-Bannon, Esq. 22 CAUSES OF ACTION 2d 317, at § 5 (2007), <u>Cause of Action: Bringing and Defending Anti-SLAPP Motions to Strike or Dismiss</u>. "The essential nature of the SLAPP action is that it is not brought with any real expectation of success on the merits" and instead seeks to chill First Amendment rights. <u>Id</u>. Defendants contend their actions were merely an exercise of their own rights to free speech and this lawsuit is intended to chill that speech (doc. 70).

While the Court recognizes that this case is unusual as it seeks to hold Defendants liable for what is arguably an exercise of their own First Amendment rights, that does not make Plaintiff's claims invalid. As the Court has found that dismissal is not proper for some Defendants on Plaintiff's First Amendment and Tortious Interference claims, the Defendants cannot show that this action was brought without any real expectation of success on the merits. For these reasons, the Court does not find Defendants' position that this is a SLAPP action well-taken.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS all Defendants' Motions as to Plaintiff's 42 U.S.C. § 1985 claim. Further, the Court GRANTS Defendants Simon Leis, Aaron Negangard, Justin Verst, and Garry Edmondson's Motions as to Plaintiff's 42 U.S.C. § 1983 claim, and DISMISSES WITHOUT PREJUDICE the state law claim against these Defendants. Therefore, no claims remain against Defendant Leis, Negangard, Verst, or Edmondson. The Court DENIES the remaining Defendants' Motions as to Plaintiff's 42 U.S.C. 1983 claim and state law claim for tortious interference with a business relationship.

SO ORDERED.

Dated: March 20, 2009     /s/ S. Arthur Spiegel
                                   S. Arthur Spiegel
                                   United States Senior District Judge